416 So.2d 641 (1982)
Billy Wayne AULTMAN, Plaintiff-Appellee,
v.
Dale RINICKER d/b/a Rinicker Flying Service, et al., Defendant-Appellant, Defendant-Appellee and Defendant-Third Party Defendant-Appellee.
No. 14927.
Court of Appeal of Louisiana, Second Circuit.
June 15, 1982.
*643 Rankin, Yeldell, Herring & Katz by Charles E. Herring, Jr., Bastrop, for defendant-appellant, Dale Rinicker d/b/a Rinicker Flying Service.
Glen W. Strong, Oak Grove, for plaintiff-appellee, Billy Wayne Aultman.
Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for defendant-appellee, Lensing & Lensing, Inc.
Davenport, Files & Kelly by William G. Kelly, Jr. and Mike C. Sanders, Monroe, for defendant-third party defendant-appellee, U. S. Fire Ins. Co.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
HALL, Judge.
Issues of mitigation of damages, cancellation of an insurance policy, and liability of an insurance agent are presented by this appeal by one of the two defendants cast in judgment for damages to plaintiff's tomato crop resulting from an airplane crop-dusting operation. Finding that the issues were correctly resolved by the district court, we affirm the judgment.
Context Facts
Defendant William Wily Gilfoil contracted with defendant Dale Rinicker, d/b/a Rinicker Flying Service, to spray his cotton crop with a phenoxy chemical known as 2-4-D. When Rinicker performed the spraying operation on March 27, 1979, some of the chemical drifted onto the property of plaintiff, Billy Aultman, severely damaging 5,000 tomato plants which plaintiff had planted in two fields during the previous day or so and 7,000 plants which were in plaintiff's hothouse preparatory to planting.
Conceding responsibility from the outset, defendants undertook to settle the claims of plaintiff and other farmers in the area who had suffered damage. The plants were inspected by Mike Kovacs, an employee of the Louisiana Department of Agriculture, who determined that about 10 percent of the 7,000 plants in the hothouse had been damaged but that they should be planted and that the 5,000 plants in the fields were a total loss and should be plowed up. Kovacs recommended replanting in the fields where the 5,000 plants were located but plaintiff did not believe 5,000 plants were available in the area. Defendant Gilfoil called nurseries in the area and arranged for the purchase of 5,000 plants of generally the same varieties and close in age and size to the plants which had been damaged. Defendants offered to settle plaintiff's claim by furnishing him with 5,000 plants and paying the cost of the labor to replant. Plaintiff declined the offer, stating at the time that it was too late to plant and testifying later at the trial that it was also too wet. Defendants renewed their offer and as an alternative proposed to settle the claim by paying plaintiff $.50 each for the 5,000 damaged plants. Plaintiff also refused this offer. These negotiations took place in the next few days following the damage and, although there is some conflict in the evidence as to the exact date on which the offers were made and as to prevailing weather conditions, it appears that the new plants could have been furnished and the fields replanted within a week or 10 days after the damage occurred.
Plaintiff planted the 7,000 plants from his hothouse within a day or two after the damage occurred. The tomatoes produced from this planting were harvested and marketed, with the first tomatoes being sold about June 15. The fields which contained the 5,000 destroyed plants were not replanted. The plaintiff sold about 72 percent of his tomato crop from his home and about 28 *644 percent at the market. It was established that timing is critical to marketing, with the price at the market being highest during the first two or three weeks of June and then declining substantially.
Proceedings in Trial Court
Plaintiff filed suit for damages against defendants Gilfoil and Rinicker. Rinicker filed a third party demand against United States Fire Insurance Company and Aviation Office of America alleging liability insurance coverage under a policy issued to him by that company. United States Fire denied coverage alleging that the policy had been canceled effective February 19, 1979. Defendant Rinicker also filed a third party demand against Lensing & Lensing, Inc., the insurance agency which had procured the insurance policy, alleging its negligence in failing to notify defendant of the cancellation of the policy and in failing to provide defendant with adequate coverage. Defendants Gilfoil and Rinicker also plead as an affirmative defense the plaintiff's failure to mitigate his damages.
After trial the district court in written reasons for judgment held: (1) defendants Gilfoil and Rinicker were liable in solido for plaintiff's damages which the trial court fixed at $819 for the partial damage to the 7,000 plants and $5,911.30 for the loss of the 5,000 plants or a total of $6,730.30; (2) the insurance policy was validly canceled prior to the occurrence of the loss pursuant to written notice properly mailed; and (3) there was no negligence on the part of the defendant insurance agency. From a judgment in favor of plaintiff against defendants Gilfoil and Rinicker and rejecting defendant Rinicker's third party demands against the insurance company and the insurance agency, only Rinicker appealed. Neither the plaintiff nor the third party defendants appealed or answered the appeal.
Specifications of Error
On appeal defendant Rinicker makes the following specifications of error:
(1) the district court erred in failing to apply the doctrine of mitigation of damages to reduce or deny damages to plaintiff for the 5,000 tomato plants which were destroyed since plaintiff refused to replant after being advised to do so;
(2) the district court erred in holding that the insurance company gave valid written notice as required by LSA-R.S. 22:636 and in holding that the policy was validly canceled;
(3) the district court erred in holding that the insurance agency did not breach its fiduciary duty to the defendant by failing to advise him of the cancellation of the policy, by failing to notify the insurer of defendant's correct address, and in failing to advise the insurer that defendant had not received the notice of cancellation.
Mitigation of Damages
Defendant Rinicker contends that plaintiff could have mitigated his loss and damages by accepting the offer of 5,000 plants and labor cost and by replanting the fields as advised by the Department of Agriculture specialist, and that plaintiff's recovery should be denied or reduced. Defendant suggests that if any recovery is allowed it should be limited to the cost of replacing the 5,000 plants at $.15 per plant and the cost of labor to replant.
The measure of damages where a growing crop is destroyed through the tort of another person is the value of the crop at the time it is destroyed, the prospective or potential value of the crop being an element in the estimate of the value thereof and being the accepted method of measuring damages for a total destruction of a growing crop. Louisiana Farms Co. v. Yazoo & M.V.R. Co., 179 La. 539, 154 So. 445 (1934). Generally, the amount of damages which should be awarded for the loss of a growing crop is the average yield and market value of crops of the same kind, planted and cared for in the same manner and in the same area, less the cost of cultivating, harvesting, and marketing the crop. The market value of such a crop is the price which the crop would have brought in a matured state at a sale in that community. *645 Bryant v. McCann, 297 So.2d 262 (La.App. 3d Cir. 1974).
The trial court's award for destruction of the 5,000 plants growing in the fields was calculated in accordance with these rules and represented the profits lost by plaintiff as a result of the total destruction of this part of his tomato crop.
The doctrine of mitigation of damages applies in this state. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968). This doctrine imposes on the injured person a duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after the injury has been inflicted. The care and diligence required of him is the same as that which would be used by a man of ordinary prudence under like circumstances. He need not make extraordinary efforts or do what is unreasonable or impractical in his efforts to minimize the damages, but his efforts to minimize them must be reasonable and in accordance with the rules of common sense, good faith and fair dealing. Darnell v. Taylor, 236 So.2d 57 (La.App. 3d Cir. 1970), writ denied 256 La. 821, 239 So.2d 346 (1970). While an injured person must use reasonable diligence and ordinary care under the circumstances to minimize his damages, this principle will not be applied to restrict an injured person's recovery when the injured person is required to make substantial expenditures of his own funds and to incur substantial risk in order to avoid the consequences of the tort. Unverzagt v. Young Builders, Inc., supra; Pelloquin v. Missouri Pacific Railroad Company, 216 So.2d 686 (La.App. 3d Cir. 1968).
According to these rules it is readily apparent that plaintiff, given the circumstances as they existed at the time of the loss, was not required to go through the substantial expense of purchasing new plants and replanting at a date later than his normal planting schedule, with the risk attendant to cultivating plants of unknown quality and the fluctuations in market prices due to a late harvest.
At first blush, however, it would appear that appellant's argument has merit since defendants had offered to pay the cost of the new plants and the labor for replanting and, had plaintiff replanted, he probably could have made some profit from the new crop, thereby reducing the amount of his loss. On closer examination, it becomes apparent that appellant's argument is without merit because his offer to furnish the plants and pay the cost of replanting was made as an offer in settlement of plaintiff's claim and not in the context of mitigating damages. It does not appear that defendants agreed to compensate plaintiff for his loss, less what he made from the new crop. It does not appear that the offer was made in order to allow plaintiff to mitigate his damages, but rather was made in an effort to settle the claim in full.
Plaintiff was not required to accept defendants' offer in full settlement of his claim. He was not required to plant a new crop, late insofar as the market was concerned, using plants of various varieties, ages, and maturities which had not been inspected. The replanted crop could not be expected to yield what the first crop, timely planted with plaintiff's own cultivated plants, would yield. Plaintiff could not be expected to replant at his own cost and risk, nor could he be expected to bear the risk of a probable lesser profit by accepting defendants' offer and replanting.
Plaintiff acted reasonably in rejecting defendants' settlement offer under the circumstances as they existed at the time the offer was made. Accordingly, his recovery of the profits he lost by reason of the defendants' tort should not be reduced.
Cancellation of Insurance Policy
In answer to defendant Rinicker's third party demand the insurance company alleged that the liability insurance policy issued to defendant for the period of April 30, 1978 to April 30, 1979 was canceled effective February 19, 1979, prior to the occurrence of the loss, by the mailing to defendant of a notice of cancellation, all in accordance with the provisions of LSA-R.S. *646 22:636.[1] The trial court held that the policy was validly canceled.
Defendant testified at trial that he never received the notice of cancellation. Defendant's argument on appeal can be outlined as follows: (a) in order for a cancellation to be effective the provisions of LSA-R.S. 22:636 must be strictly complied with; (b) if the provisions of LSA-R.S. 22:636 are strictly complied with then a prima facie presumption of delivery of the notice of cancellation exists in favor of the insurer; (c) the presumption of delivery upon strict compliance with LSA-R.S. 22:636 is a rebuttable presumption and can be overcome by positive evidence of lack of delivery; (d) if the provisions of the statute are not strictly complied with then the notice is not effective and the burden of proof shifts to the insurer to prove actual receipt of written notice by the insured; (e) Lensing & Lensing, Inc. was the agent for the insurance company concerning the issuance of the policy and the later endorsement to the policy in question; (f) Lensing & Lensing, Inc., had knowledge of the correct address of defendant as early as June 5, 1978; (g) the knowledge of Lensing & Lensing, Inc. as to the correct address of defendant is imputed to the insurance company and is binding on the company; (h) the knowledge of Lensing & Lensing, Inc. that Rinicker was denying receipt of any notice of cancellation is imputed to the insurance company; (i) where the insurer has knowledge that the insured's address has been changed from that given in the policy, notice of cancellation made to an address in the company's records is ineffectual; and (j) the insurance company failed to prove delivery of the notice and defendant proved nondelivery.
In order to effect cancellation of an insurance policy under LSA-R.S. 22:636 written notice of cancellation must be actually delivered or mailed to the insured not less than five days prior to the effective date of cancellation. The term "mailed to the insured" connotes a completed process, that is, the transmission of the notice through the United States mail. Nondelivery renders the notice ineffectual. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (La.1959). The affidavit of the individual making or supervising the mailing of the notice of cancellation, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, constitutes prima facie evidence of delivery of the notice of cancellation. Only a rebuttable presumption is established, not an absolute one, and the presumption can be rebutted by proof of nondelivery. Broadway v. All-Star Insurance Corporation, supra; Skipper v. Federal Insurance *647 Company, supra; Cuccia v. Allstate Insurance Company, 262 La. 545, 263 So.2d 884 (1972).
At the time of the issuance of the policy in April 1978 defendant's correct mailing address was Route 2, Box 528, Lake Providence, Louisiana. This was the address written on the policy. In September 1978 the Post Office Department changed the number of defendant's box on Route 2 from 528 to 550. During the policy period some correspondence was sent by the insurance agency to the defendant addressed to Box 550. The notice of cancellation from the insurance company was directed to the defendant at Route 2, Box 528. An affidavit of the insurance company's employee establishes that the notice was mailed on February 5, 1979. A copy of the notice was received by the insurance agency several days prior to the effective date of the cancellation, February 19, 1979, and prior to the occurrence of the loss.
Although defendant's box number was changed by the post office for reasons of its own, defendant continued at all times to live at the same residence on Route 2. The person responsible for delivering defendant's mail delivered all of his mail to his mailbox, regardless of the box number shown on any piece of mail. There was no Box 528 on the route.
About four days prior to the occurrence of the loss, Mark Haber of Lensing & Lensing, who handled defendant's account, told defendant in a telephone conversation that the policy had been canceled. In the telephone conversation defendant told Haber he had not received notice of cancellation. Haber obtained a partial refund of the premium from the insurance company and either credited defendant's account at the insurance agency or deposited the amount in defendant's bank account.
The address to which the notice of cancellation was mailed was sufficiently certain and correct to comply with the statute and to establish a prima facie presumption of delivery and receipt of the notice. The burden was on the defendant to rebut the presumption by proof of nondelivery.
Defendant testified he never saw the notice of cancellation. His wife testified she did not remember receiving any mail from the insurance company prior to the occurrence of the loss. Her testimony also established a loose arrangement for handling incoming mail which was sometimes picked up by her at the box and sometimes by their teenage children. Her testimony also established that after the loss a letter from the insurance company addressed in the same manner was received.
While the written reasons for judgment of the trial court do not reflect a specific factual finding by that court that defendant failed to prove nondelivery of the notice, such a finding seems inherent in the court's conclusion that "the evidence is abundantly clear that a valid cancellation was effected ...." Defendant's evidence was insufficient to rebut the presumption of delivery. The decision by the trial court on this issue was not clearly wrong.
Liability of Insurance Agency
Defendant contends that the insurance agency was at fault in not providing the insurance company with his correct address and in not more clearly informing him in the telephone conversation that the entire policy had been canceled.
As noted above, the change in the box number of defendant's address was insignificant and would not have affected delivery to the defendant in the normal course of the mail.
The insurance agency employee testified that he told defendant in the telephone conversation that he had received notice that the insurance policy was canceled. Defendant testified he thought the agent meant that only the "hull" insurance had been canceled and not the chemical liability endorsement. Defendant demonstrated no reasonable basis for his interpretation of the agent's statement. Defendant did not establish any failure on the part of the insurance agency to perform its duties to him and the trial court correctly found there is no liability on the part of the insurance agency.
*648 Decree
For the reasons assigned, the judgment of the district court is affirmed at defendant-appellant's costs.
Affirmed.
NOTES
[1] LSA-R.S. 22:636:

"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
"(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
"(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
"B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
"C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
"D. The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order...."