460 So.2d 1147 (1984)
James D. NORRED and Jessie Lee Norred, Plaintiffs-Appellants,
v.
The EMPLOYERS FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 16650-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Writ Denied February 4, 1985.
*1148 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by Phil D. Myers, Monroe, for defendant-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
HALL, Judge.
James Norred, the owner of a pickup truck involved in an accident, is appealing the trial court's decision that the truck was not covered by insurance. The trial court found that the policy had expired prior to the occurrence of the accident, renewal had not taken place, and adequate notice of the insurance company's intent not to renew had been given to the owner. Because we find the insurance company's notice was inadequate, the trial court's judgment is reversed and the case is remanded for determination of damages.
Employers Fire Insurance Company (E.F.I.C.) issued an automobile insurance policy to James Norred on December 11, 1981. Coverage was effective until December 11, 1982. In May 1983, Mr. Norred's son was involved in an accident while driving the vehicle described in the policy. The accident was promptly reported, but Mr. Norred was informed that the policy had not been renewed by the company; coverage had ended on midnight, December 11, 1982. Mr. Norred then filed suit for a declaratory judgment and to recover under the collision coverage of the policy, contending that E.F.I.C. did not notify him in accordance with LSA-R.S. 22:636.1 of E.F. I.C.'s intent not to renew the policy. By stipulation, only the issue of the insurance company's liability was tried.
The trial court held that notice of nonrenewal was sent to Mr. Norred. The court noted that a post office certificate of mailing was introduced into evidence. This certificate showed that the letter was deposited with the post office, although unlike certified mail, the certificate did not indicate that the mail was received by Mr. Norred. The court also noted that the insurance agency received a copy of the notice by mail. The court found that under LSA-R.S. 22:636.1, receipt was not required; proof of mailing was sufficient. The court noted that while it fully believed Mr. Norred's statement that he did not *1149 receive the notice, the law did not require proof of receipt, and coverage was thus not in effect at the time of the accident.
LSA-R.S. 22:636.1 regulates cancellation and nonrenewal of automobile insurance policies covering private passenger automobiles. Subsection E. of the statute provides that no insurer shall fail to renew a policy unless it shall "mail or deliver" to the named insured, at the address shown in the policy, at least 20 days advance notice of its intention not to renew. Subsection F. provides:
"Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice."
Cases interpreting LSA-R.S. 22:636 which regulates cancellation of other types of insurance policies and which also requires mailing or delivery of notice have held that since the purpose of notice is to inform the insured that the policy is being terminated, and to afford sufficient time to obtain other insurance, an interpretation which would permit deposit in the mail to conclusively terminate coverage would undermine the purpose of notice. "Mailed to the insured" connotes the completed process of transmission of notice through the mails rather than merely a depositing of notice in the mails. Affirmative proof of nondelivery renders notice ineffectual. Proof of mailing establishes a rebuttable presumption of delivery; the presumption can be rebutted by affirmative proof of nondelivery. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La. 1973); Aultman v. Rinicker, 416 So.2d 641 (La. App.2d Cir.1982).
Other cases have logically applied the same interpretation to the mailing of notice of cancellation or nonrenewal under LSA-R.S. 22:636.1. Automobile Club Insurance Company v. Aaron, 296 So.2d 464 (La.App. 4th Cir.1974), writ refused 300 So.2d 186 (La.1974); Red Stick Confectionaries, Inc. v. Commercial Union Ins. Co., 365 So.2d 580 (La.App. 1st Cir.1978), writ refused 366 So.2d 574 (La.1979); Pincus v. Pumilia, 412 So.2d 151 (La.App. 4th Cir. 1982); Rosenburg v. Carr, 422 So.2d 526 (La.App. 5th Cir.1982). Compare Harang v. Sparacino, 257 So.2d 785 (La.App. 4th Cir.1972); Dufrene v. Dixie Auto Ins. Co., 376 So.2d 507 (La.App. 4th Cir.1979), writ denied 378 So.2d 1390 (La.1980); Green v. Motors Ins. Corp., 389 So.2d 1370 (La.App. 4th Cir.1980), writ denied 396 So.2d 884 (La.1981).
In the instant case, the trial court correctly found that the defendant insurer convincingly proved the mailing of the notice of intent not to renew. However, the trial court erred in not giving effect to its finding that it fully believed the plaintiff insured did not receive the notice. The affirmative proof of nondelivery should have been considered.
The trial court's finding that the insured did not receive the notice is supported by the evidence and is not clearly wrong. Mr. Norred testified that he nearly always was the one who picked up the mail at the post office box. His wife, the only other person with the combination to the post office box, infrequently picked up the mail on her day off from work, and did not recall ever picking up a letter from the insurance company. The circumstances under which the mail was picked up serve to help distinguish the present case from Aultman v. Rinicker, supra, in which notice was found adequate. There the insured testified that he never saw a notice of cancellation while his wife testified that she could not recall receiving any mail from the insurance company. However, the insured apparently seldom picked up the mail; the insured's wife and teenage children had a loose arrangement by which the mail was picked up.
Furthermore, Mr. Norred presented additional evidence of nondelivery. Mr. Norred testified that he knew his policy expired in December 1982, and that on or about January 3, 1983, he called Mr. Patrick Cone, an employee of the insurance agency, and told Mr. Cone to draw a draft on his account to renew the insurance policy. This method *1150 of handling matters between Mr. Norred and the insurance agency was not unusual. Mr. Norred also testified that in March 1983, he sold a pickup and personally went by the agency to tell Mr. Cone to take the truck off the insurance policy. Certainly, both of these conversations between Mr. Norred and Mr. Cone are difficult to explain if Mr. Norred had received notice of nonrenewal in 1982.
While Mr. Norred's recollection of his second conversation with Mr. Cone was clear and detailed, and was corroborated to some extent by the testimony of another witness, Mr. Cone's testimony was vague and unclear. On direct examination, Mr. Norred stated that after selling a truck to a Mr. Maxwell, Mr. Maxwell and he stopped by the bank, that Mr. Norred went in and told Mr. Cone to take the truck off the insurance policy, and that Mr. Norred watched Mr. Cone write his request down on a piece of paper. On cross-examination, Mr. Norred gave a more detailed account of this event:
"Q. And when you talked to Pat Cone and told him that you had sold the truck and to take that truck off your policy, again he didn't tell you that the policy was expired?
"A. Now I'm going to tell you about that. He works in that little office and he was busy. What I mean is, you know. And when I went in and told him, I said, Pat be sure and take that pickup off my insurance because I just sold it and he had a piece of paper lying there and he wrote it down, but he was busy with someone else, but he definitely wrote it down. And that's all I can say."
Mr. Maxwell corroborated Mr. Norred's testimony by acknowledging that he accompanied Mr. Norred to the bank and waited outside after Mr. Norred told him that he was going in to have the truck removed from the insurance policy.
On the other hand, Mr. Cone could not recall either conversation with Mr. Norred:
"Q. Okay. Now, do you recall between the date of October 25, 1982 and when Mr. Norred came in and said my boy has had an accident and I need to report it. In that several months in between there, do you ever remember Mr. Norred contacting you in person or by telephone and saying go ahead and draw drafts on my account to pay the insurance premiums on this insurance policy?
"A. To the best of my knowledge, I cannot remember Mr. Culpepper.
"Q. Okay. What you are saying is, I can't say yea or nay but I just don't remember it?
"A. I don't think so, but to be honest with you I can't remember.
"Q. Okay. Well during that time period, do you remember Mr. Norred contacting you and saying I have sold one of these vehicles that is insured on this policy. I need to delete or take that vehicle off of my coverage?
"A. To be honest with you, he could have, but I do not think so, but again I can't remember."
Mr. Norred's clear, detailed testimony, corroborated to some extent by Mr. Maxwell, combined with the testimony of how Mr. Norred picked up his mail, together with evidence that Mr. Norred had regularly insured his vehicles with the agency over a period of several years, indicating that he would have made other arrangements for insurance if he had received notice that the defendant's policy would not be renewed, provides sufficient affirmative evidence of nondelivery from which the trial judge properly concluded that Mr. Norred did not receive notice of nonrenewal. The rebuttable presumption of delivery was rebutted by sufficient evidence of nondelivery of the mailed notice. Accordingly, the notice requirements of LSA-R.S. 22:636.1 were not met; the policy was renewed and in effect at the time of the accident.
Since the issue of the amount of the loss under the policy was not before the trial court, the case will be remanded for determination of the amount due Mr. Norred. However, because the factual question presented was substantial, we find the insurer was not arbitrary or capricious in *1151 withholding payment, and that penalties and attorney fees should be disallowed.
For the reasons assigned above, the judgment of the trial court is reversed and the case is remanded for determination of the amount due under the policy. Costs are assessed to the appellee.
Reversed and remanded.