COLE, Judge.
This appeal involves an award of damages for the wrongful seizure of a bulldozer owned by plaintiffs. The primary issues presented are whether plaintiffs’ recovery should be limited because of their alleged failure to mitigate damages and whether the damages awarded to plaintiffs were excessive.
This matter arose from the following facts. On October 3,1979 defendant, First State Bank & Trust Company (Bank), loaned a certain sum of money to Russell Varnado. On that same date Varnado delivered to the Bank a promissory note secured by a chattel mortgage on an Allis Chalmer bulldozer owned by him. For reasons not pertinent in this appeal, the Bank successively had Varnado execute new promissory notes on July 9, 1980 and August 15, 1980. Each of these notes was secured by a chattel mortgage on the same bulldozer. (The description of the bulldozer contained in both the July 9th and August 15th mortgages included an incorrect serial number.)
On September 18, 1980 Varnado sold the bulldozer to Hammond Equipment Company, misrepresenting it as being free of any encumbrances. The bulldozer was thereafter purchased from Hammond Equipment Company by plaintiffs, Anthony Mon-teleone and Harold Starkey, on September 30, 1980.[1] Plaintiffs had no actual knowledge of the existence of a chattel mortgage on the bulldozer.
At the Bank’s request, Varnado again executed a new promissory note and chattel mortgage on the bulldozer on December 1, 1980. The Bank was unaware Varnado no longer owned the bulldozer at this time. After this note became delinquent, the *132 Bank filed suit on May 13, 1982 requesting recognition of the chattel mortgage executed on December 1, 1980. On July 2, 1982 the Bank obtained a default judgment against Varnado recognizing this mortgage. A writ of fieri facias was issued shortly thereafter, but was not executed at that time because the location of the bulldozer could not be ascertained.
The Bank first learned Varnado had sold the bulldozer at a judgment debtor rule held on October 29, 1982. After the bulldozer was eventually located in Montel-eone’s possession, the Bank directed the sheriffs office to seize it. This seizure was accomplished on January 7, 1983. The officer executing the writ appointed Mon-teleone as custodian of the bulldozer and left it in his care. The bulldozer was never physically removed from Monteleone’s custody.
On January 25,1983, a letter was written by plaintiffs’ attorney to the attorney representing the Bank. This letter set forth plaintiffs’ claim of ownership and contended the Bank’s chattel mortgage was unenforceable against the bulldozer in Montel-eone’s possession. It was requested the Bank indicate within one week whether it would voluntarily release the bulldozer in order to avoid additional damages. No evidence was introduced to show the Bank took any action until March 11, 1983, when it voluntarily released the bulldozer from seizure.
Plaintiffs subsequently filed this suit for wrongful seizure. The trial court rendered judgment in favor of plaintiffs, awarding them damages for both economic losses and loss of reputation. Monteleone was awarded $9,519 for economic losses and Starkey $5,069. Each plaintiff was also awarded $5,000 for loss of reputation. The Bank has appealed.
The only issues raised by the Bank on appeal relate to quantum. No error was assigned to the finding that the seizure was wrongful and, accordingly, this issue is not now before the Court. The primary argument made by the Bank is that plaintiffs should not be allowed to recover because they failed to meet their duty to mitigate damages. First, the Bank maintains plaintiffs could have in fact used the bulldozer during the period of the seizure, since it was not physically removed from their custody and they were not specifically prohibited from using it. The Bank contends plaintiffs thus could have avoided the largest part of their economic losses. Additionally, the Bank argues plaintiffs could have also mitigated their damages by posting bond to obtain the release of the bulldozer from seizure.[2]
We disagree with the Bank’s contention plaintiffs were entitled to make use of the bulldozer during the period it was under seizure, either for their own personal use and to do work for hire. Under La. Code Civ.P. art. 327 the seizure of movable property also effects the seizure of the fruits and issues which it produces while under seizure; and the sheriff is required to collect all rents and revenue produced by the property during the period of seizure. Thus, it is clear plaintiffs could not have used the bulldozer to do work for hire while it was under seizure, since any revenues so produced would have been also subject to seizure.
Further, under La.Code Civ.P. art. 326 the sheriff has a duty to safeguard, protect and preserve seized property.[3] The sheriff may appoint a keeper for this purpose, who has the same duty to protect and preserve the seized property as the sheriff. La.Code Civ.P. art. 326; see Baker Bank & *133 Trust Co. v. Chausse, 393 So.2d 261, 263-4, (La.App. 1st Cir.1980), writ denied, 397 So.2d 1364 (La.1981); Bickham Motors, Inc. v. Crain, 185 So.2d 271, 276 (La.App. 1st Cir.1966). In the present case Montel-eone was appointed keeper of the bulldozer under seizure. Use of the bulldozer could have resulted in damages to it or a depreciation in its value. Accordingly, it would have been totally inconsistent with Montel-eone’s duties as keeper of the property to have used it either for his own purposes or that of co-owner Starkey.
We also reject the Bank’s argument plaintiffs could have mitigated their losses by posting a release bond pursuant to La. R.S. 13:3874 and Code Civ.P. art. 5127. Under the doctrine of mitigation of damages an injured person has a duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after an injury has been inflicted. Unverzagt v. Young Builders, Inc., 215 So.2d 823 (La.1968); Aultman v. Rinicker, 416 So.2d 641, 645 (La.App. 2d Cir.1982); Stanley v. Guy, 442 So.2d 579 (La.App. 1st Cir.1983). However, this doctrine will not be applied to restrict a plaintiffs recovery when he would be required to make substantial expenditures of his own funds in order to avoid the consequences of the defendant’s acts. Unverzagt, supra; Aultman, supra; also see Pope v. Spiers, 347 So.2d 1191 (La.App. 1st Cir.1977).
La.R.S. 13:3874 permits certain parties claiming ownership of seized property to obtain the release of the property by posting security which exceeds one-half of the property’s value. In the present case, it would have been necessary for plaintiffs to post a bond in the range of $4,500 to $6,000 in order to obtain the release of the bulldozer.[4] We conclude plaintiffs were not required under the mitigation doctrine to furnish bond in such a substantial amount.
Given the substantial sum necessary, it would be inequitable to restrict plaintiffs’ recovery due to their failure to post a release bond, particularly since the Bank was put on notice at an early point of the possibility of damages to plaintiffs. A period of approximately six weeks lapsed between the time the Bank received formal written notice of plaintiffs’ ownership claims and the time the Bank voluntarily released the bulldozer. The Bank had an opportunity to prevent a large part of plaintiffs’ damages after the initial seizure, since it could have voluntarily released the bulldozer at any point during this period. Since the Bank had a superior opportunity to prevent these losses but failed to do so, it can not now cast the risk of these damages upon plaintiffs by claiming they did not fulfill their duty to mitigate damages by either using the bulldozer despite the seizure or posting a release bond.
However, we conclude plaintiffs did, in fact, fail to mitigate their damages with respect to an alleged loss in the value of the bulldozer. Although there was evidence establishing the value of the bulldozer was at least $12,500, plaintiffs sold it shortly after it was released from seizure for $7,000. Plaintiffs claim this was the best price they could obtain since everyone was aware the bulldozer had been under seizure. The trial court agreed and awarded plaintiffs $5,500, the difference between the actual value of the bulldozer and the price for which plaintiffs sold it.
We conclude the trial court erred in making any award for this item of damages. There is no evidence in the record indicating plaintiffs were forced to sell the bulldozer. They did so voluntarily without making any real attempt to mitigate this item of damages. There was testimony the bulldozer could have been sold at auction for between $12,000 to $15,000, but plaintiffs made no attempt to sell it in this manner. Additionally, plaintiffs could have advertised and sought bids from nearby metropolitan areas such as Baton Rouge or *134 New Orleans, where it is doubtful prospective purchasers would either know or care the bulldozer had once been seized. For these reasons, we conclude any loss in the value of the bulldozer resulted from plaintiffs’ failure to make any attempt to mitigate their damages. Accordingly, we reverse that portion of the trial court judgment awarding plaintiffs’ $5,500 for a loss in the value of the bulldozer, thereby reducing Monteleone’s award for economic losses from $9,519 to $6,769 and Starkey’s award for economic losses from $5,069 to $2,319.
The Bank’s final argument is that the evidence does not support the amount of damages awarded to plaintiffs for loss of reputation. The evidence offered by plaintiffs to establish this item of damages consisted of their own testimony and that of several of their friends. The latter witnesses testified they had each heard unfavorable gossip and speculation made about plaintiffs in connection with the seizure. However, each also indicated the seizure and subsequent gossip had not altered their own opinions of the plaintiffs.
Additionally, both plaintiffs testified numerous comments and inquiries were made to them regarding the seizure, some inquiring whether they were dealing in stolen property. Starkey stated these comments had continued even after the release of the bulldozer, causing him great embarrassment. Monteleone indicated he had on occasion been subject to ridicule as a result of the seizure. Both men felt their reputations for honesty and integrity had been damaged by the incident.
After careful review, we agree with the trial court’s conclusion the seizure caused plaintiffs some embarrassment and humiliation. However, we do not find the evidence supports the amount awarded by the trial court. Any loss of reputation plaintiffs may have suffered appears to have been minimal. In fact, plaintiffs’ own witnesses indicated the seizure had not caused them to alter their opinions of plaintiffs. Nevertheless, plaintiffs are entitled to recover for the embarrassment and humiliation they have suffered. Mid-State Homes, Inc. v. Lartigue, 383 So.2d 99 (La.App. 3d Cir.1980). Accordingly, we reduce the damages awarded to each plaintiff for this item of damages from $5,000 to $1,500, the highest amount supported by the evidence.
The judgment appealed from is affirmed in all other respects. One-half of the costs of this appeal are to be borne by appellant and one-half by appellees.
AMENDED AND, AS AMENDED, AFFIRMED.

. Although the bill of sale shows only Anthony Monteleone as purchaser, the testimony of the parties indicates the purchase was made by both men as a joint venture.

. This argument was apparently meant to be in the alternative, since there would have been no purpose in obtaining the release of the bulldozer if it was permissible to use it while it was under < seizure.

. These duties extend to all seized property which is taken into actual possession by the sheriff or which he is required to take into actual possession. Art. 326 provides the sheriff shall take into actual possession all movable property seized which is susceptible of such possession. The bulldozer involved in the present case falls into this category. Thus, the sheriff and the keeper appointed by him had a duty to safeguard, protect and preserve it.

. This figure is based on estimates made by various witnesses at trial as to the bulldozer’s value.