557 So.2d 1073 (1990)
Marshall SNOW, Plaintiff/Appellee,
v.
MID-AMERICAN INDEMNITY COMPANY, Defendant/Appellant.
No. 21254-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1075 Carl Rice & Associates by M. Carl Rice, Kent Fairchild, Shreveport, for plaintiff/appellee.
David L. White, Bossier City, for defendant/appellant.
Before HALL, C.J., and SEXTON and FRED W. JONES, Jr., JJ.
HALL, Chief Judge.
Mid-American Indemnity Company appeals the trial court judgment which was based on a finding that the automobile insurance policy issued to Marshall Snow had not been validly cancelled for non-payment of premiums, and which awarded plaintiff a total of $6,333 for the total loss of his automobile, penalties and attorneys fees for arbitrary and capricious failure to pay the claim, and damages for loss of operator's license, registration and license plate, loss of privilege of driving, and loss of use of the vehicle. For the following reasons we amend the judgment of the trial court in part, reverse in part, and affirm in part.

FACTS
Marshall Snow applied for and was issued two insurance policies on two cars with Mid-American Indemnity Company through the Boatner Insurance Agency. Both policies were financed by Mid-American Acceptance Corporation with the premiums to be paid in installments. Policy L-60937 on a 1978 Malibu dated 7/14/86 was issued for a deferred payment of $609.11. Marshall Snow paid $206.06 down and two subsequent payments of $155 and $140.32 respectively leaving a balance of a $117.73 owing on the policy. Marshall Snow was informed by letter from Mid-American Acceptance Corporation dated 9/29/86 that the policy balance of $117.73 was due on October 14, 1986. He purchased a money order for $117 and taped to the back seventy-one cents in coins. This was sent to Mid-American Acceptance Corporation by mail. By memo dated 10/17/86 the money order was returned to Marshall Snow stating that the policy in question had been paid in full. Upon receiving the returned money order and the memo Marshall Snow called the offices of Mid-American Acceptance Corporation and spoke to Pam Greene. He asked her to check the balance on the policy as he had another policy which had been paid in full. Ms. Greene left the telephone, returned and assured Mr. Snow that his policy was paid.
On October 21, 1986, according to company records, notice of cancellation effective November 1, 1986 was mailed to Marshall Snow at his home address. Marshall Snow testified that he never received the cancellation notice. Mrs. Snow testified that no cancellation had been received. She testified to a mail handling policy by which she checks the mail and shows it to Mr. Snow. Although not alone in the house she stated that she picks up the mail because Mr. Snow works nights and is asleep. The children living at home are away at school when the mail is delivered.
On December 3, 1986, the 1978 Malibu was involved in an accident while being driven by Mr. Snow's son. When he informed the insurance agency of the accident Mr. Snow was advised that a cancellation notice had been received from Mid-American Indemnity Company. Mr. Snow testified that this was the first that he knew that the policy had been cancelled.
The car was a total loss. As a result of the accident and the insurance company's denial of liability insurance coverage Mr. Snow had his driver's license suspended, his registration revoked, and his license plate removed from his car. Plaintiff sought recovery under the collision provision of the policy and penalties and attorney's fees for arbitrary and capricious failure to pay his claim. He also sought damages resulting from wrongful cancellation of the policy and denial of liability coverage. The trial court found that he overcame the presumption of delivery of the cancellation notice and awarded recovery under the policy, penalties and attorney's fees, and damages. Defendant appealed suspensively.

CANCELLATION
LSA-R.S. 22:636.1 provides the procedures for non-renewal and cancellation *1076 of an automobile insurance policy by the insurer. Written notice of cancellation must be actually delivered or mailed to the insured at least 10 days prior to the effective date of the cancellation along with a statement of the reason for cancellation. Hemperly v. Aetna Casualty & Surety Company, 516 So.2d 1202 (La.App. 2d Cir. 1987). Proof of mailing to the named insured at the address on the policy is sufficient to establish a rebuttable presumption of delivery which can be overcome by affirmative proof of non-delivery. Broadway v. All-star Insurance Corporation, 285 So.2d 536 (La.1973); Hemperly v. Aetna Casualty & Surety Company, supra; Norred v. Employer's Fire Insurance Company, 460 So.2d 1147 (La.App. 2d Cir. 1984), writ denied 462 So.2d 1265 (La.1985); Aultman v. Rinicker, 416 So.2d 641 (La. App. 2d Cir.1982). The burden of proof first rests upon the insurer to prove by prima facia evidence mailing of notice to the insured at the proper address. When the insurer meets this burden of proof, a presumption of delivery is established which may then be rebutted by the proof of non-delivery. The insured has the burden of proof to establish non-delivery. Aultman v. Rinicker, supra.
The trial court in the case at bar found that the plaintiff overcame the presumption of delivery of the cancellation notice and, consequently, that the coverage afforded under the policy was in effect. On the record before us, we cannot say the trial court manifestly erred in this finding. The mail handling system established by testimony of the Snows and their denial of receipt of the notice is sufficient to overcome the presumption of delivery.
Further, an implicit element of the trial court's finding of continued coverage is the wrongful cancellation of the Snow's insurance policy. The record indicates that plaintiff attempted to pay the policy premium by money order prior to the due date. He was informed by the insurer that the policy was paid in full. His payment was returned. The trial court had before it the ledger sheet which clearly showed Marshall Snow's two policies one below the other. Considering the proximity of the two entries it is difficult to see how the insurer could fail to determine that one policy had a balance owing while the other policy showed "Paid in Full." Like the trial court we do not find defendant's explanation concerning the handling of the payment to be sufficient. The defendant should have seen the second ledger entry immediately below the one relied upon by the defendant. Therefore, the insurance company was negligent in handling the premium and cancelling the policy. See Naulty v. OUPAC, Inc., 448 So.2d 1322 (La.App. 5th Cir.1984). Under these circumstances, the insurer was not entitled to cancel the policy for non-payment of premium.

RECOVERY UNDER COLLISION COVERAGE
Plaintiff sought to recover under the collision provisions of the policy for the damage to the car. Plaintiff's expert testified that the car was a total loss and had a value of $1,712.50 less the salvage value of $350 for a net value of $1,362.50. The cost to repair the vehicle was estimated to be $1,439.00. An automobile is determined to be a total loss when the cost of repairs exceeds its pre-accident value. Lee v. Louisiana Farm Bureau Insurance Co., 532 So.2d 486 (La.App. 1st Cir.1988); Roy v. Commercial Union Assurance Co, 385 So.2d 1273 (La.App. 3d Cir.1980). The pre-accident value is the maximum amount that the insurance company is liable to pay on a total loss claim. See Hammack v. Resolute Fire Insurance Company, 96 So.2d 612 (La.1957). Further, the collision policy contained a $250 deductible provision which further reduces the amount due for damages to the car to $1,112.50. That plaintiff chose to keep and repair or partially repair the vehicle is not relevant. Therefore, the award for damages to the car will be reduced to $1,112.50. See Lee v. Louisiana Farm Bureau Insurance Company, supra.
Plaintiff also sought and was awarded penalties of $144 and attorney's fees of $2,500 for arbitrary and capricious failure to pay a claim within 60 days as required *1077 by LSA-R.S. 22:658. LSA-R.S. 22:658(B)(1) provides the penalty for arbitrary and capricious failure to pay a claim. At the time the plaintiff's claim arose, this provision stated:
"Failure to make such payment within 60 days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause shall subject the insurer to a penalty, in addition to the amount of the loss, of 10% damages on the total amount of the loss, payable to the insured ... together with all reasonable attorney's fees for the prosecution and collection of such loss...."
Appellant's argument that the trial court erred in imposing penalties and attorney's fees for arbitrary and capricious denial of Mr. Snow's claim hangs on the testimony of Ms. Greene and its evaluation by the trial court. Ms. Greene testified she returned the premium payment made by plaintiff, but denied that he subsequently called her about it. The trial court is in a better position to evaluate the credibility of witnesses and the weight of evidence than in an appellate court who does not see or hear the witnesses. Therefore, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Bank of Coushatta v. Patrick, 503 So.2d 1061 (La.App. 2d Cir.1987). The trial court apparently did not afford much weight to the testimony of Ms. Greene. Considering the inconsistencies in her testimony concerning the alleged phone ledgers, we cannot say the trial court erred in its determination.
Because the failure to pay was based on the insurance company's negligent and wrongful attempted cancellation of the policy due to its employee's error, the trial court was correct in finding the failure to pay was arbitrary and capricious and in awarding penalties and attorney's fees. Since we reduced the amount awarded under the policy to $1,112.50, the 10% penalty must be reduced to $111.25. The attorney's fees granted by the court were reasonable and will be affirmed.

DAMAGES
The trial court also awarded a total of $2,250 to compensate plaintiff for loss of operator's license, registration and license plate ($750), loss of privilege of driving ($750), and loss of use of vehicle ($750). This part of this suit is based upon tort or breach of contract founded upon a duty or obligation of the insurance company to verify liability coverage sufficient to meet the requirements of LSA-R.S. 32:851 et seq., the Louisiana Motor Vehicle Safety Responsibility Law. The evidence shows that Ms. Greene appeared at the license revocation hearing and asserted cancellation of plaintiff's liability coverage.
Appellant relies upon Nelson v. Allstate Insurance Company, 464 So.2d 1015 (La. App. 1st Cir.1985) for its contention that these items of damage are not recoverable under LSA-R.S. 22:658. However, the damages awarded do not arise out of the failure to pay a claim under LSA-R.S. 22:658, but are based upon the violation of an implied duty imposed upon the insurance company to verify liability coverage for purposes of the insured's compliance with the safety responsibility law. Thus, this case is distinguishable from Nelson, supra. These items of damage are separate and distinct from the penalties and attorney's fees imposed under LSA-R.S. 22:658 for failure to pay plaintiff's claim under the insurance policy. The items of damage concerned here result not from the collision portion of the insurance policy but from the insurance company's obligations under the liability portion of the insurance policy.
As argued by appellant, the separate awards of $750 each for loss of operator's license, registration and plates, loss of privilege of driving, and loss of use of vehicle are somewhat duplicative and, in our view, excessive. Accordingly, we reduce the award of damages by $750 to a total of $1,500.

*1078 DECREE
For the foregoing reasons, the judgment of the trial court is amended in part to provide an award of $1,112.50 for loss of the car, penalties of $111.25, attorney's fees of $2,500, and $1,500 for loss related to the defendant's denial of coverage for purposes of the safety responsibility law, for a total of $5,223.75, with interest from date of original judgment on the penalties and attorney's fees in the amount of $2,611.25 and from date of judicial demand on the loss of car and denial of coverage in the amount of $2,612.50. Costs of the appeal are assessed to the defendant.
AMENDED IN PART, REVERSED IN PART, AND AFFIRMED IN PART.