662 So.2d 808 (1995)
1900 PARTNERSHIP, et al, Plaintiffs-Appellees,
v.
BUBBER, INC., Grady Wilson and Grady W. "Bubber" Brown, Sr., Defendants-Appellants.
No. 27475-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
Rehearing Denied November 30, 1995.
*810 Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for appellants.
Leo A. Miller, Jr., Monroe, for appellees.
Before STEWART, J., and CLARK and SAVOIE, JJ. Pro Tem.
SAVOIE, Judge Pro Tem.
The defendants, Bubber Inc., Grady W. "Bubber" Brown, Sr., Grady Wilson, Panola Farming Partnership, 3-G Partnership, Gamma J.L. Corporation, Gamma G.W. Corporation, Gamma D.B. Corporation, Gamma W.B. Corporation, Gamma H.B. Corporation, West Panola Corporation, and G.W.B. Corporation, appeal from a trial court judgment in favor of the plaintiffs, 1900 Partnership and Robbie Howard, for damage to approximately 900 acres of cotton in East Carroll Parish. The crop damage resulted from the spraying of a herbicide known as "STAM" on the defendants' adjoining rice field which drifted onto the plaintiff's crop. For the following reasons, we affirm in part and reverse in part the trial court judgment.

FACTS AND PROCEDURAL HISTORY
1900 Partnership, a juridical entity composed of several corporations and partnerships, leased several hundred acres upon which cotton was planted. This farming operation was managed by Robbie Howard, a shareholder in some of the corporations forming the partnership.
Bubber, Inc. is owned by Grady W. "Bubber" Brown, Sr. Mr. Brown managed an assortment of corporations and partnerships which farmed property to the south of the 1900 Partnership property. Grady Wilson is employed as an agricultural pilot for Bubber, Inc. The plaintiffs contend that during the week of May 21-28, 1989, Wilson applied chemicals to the rice crop managed by Brown and the chemicals drifted onto the newly developing cotton crop of 1900 Partnership. The plaintiffs contend that 850 acres of cotton were damaged to the extent that the crop yield was reduced and 80 acres of cotton were totally destroyed. The plaintiffs also assert that Robbie Howard, the farm manager, suffered mental anguish due to the damage to and loss of the cotton crop and that he had to work many hours of uncompensated overtime in order to mitigate the damages.
The defendants filed a third party demand against Howard Aviation, alleging that a pilot with that company was also applying chemicals near the plaintiffs' cotton crop during the same time as Wilson and that if any damage occurred to the cotton crop, it could be partially attributable to the actions of Howard Aviation. The defendants also allege that the plaintiffs failed to minimize their damages in one particular field by failing to replant with cotton or some other crop such as soybeans.
The trial court rejected the defendants' third party demand against Howard Aviation and rejected the demand of Robbie Howard for extra hours worked to mitigate damages.
The court found that the actions of the defendants did result in damage to the plaintiffs. On May 19, 1994, judgment was rendered in favor of the 1900 Partnership and Robbie Howard, against all defendants in solido. 1900 Partnership was awarded the sum of $33,923.11, subject to a credit to the defendants of $4,200 for aiding in the harvest of the cotton crop and for installation of a culvert. Robbie Howard was awarded the sum of $5,000 for mental anguish. Expert witness fees were also awarded.
The plaintiffs filed a motion for partial new trial. They argued that the trial court incorrectly assigned percentages of damages to *811 certain fields on the property and found that other fields did not suffer any permanent damage. The plaintiffs then amended their motion for new trial, asserting that they had found a new expert that could substantiate their claim that some of the crop at a particular stage of development was, in fact, damaged by the spraying and did not recover as found by the trial court in reasons for judgment. The motion for new trial was denied by the trial court on August 3, 1994. The defendants then appealed suspensively from the trial court judgment and the plaintiffs answered the appeal.
The defendants state in brief that, even though they continue to feel that there was no loss caused to the plaintiff's cotton, they concede that consideration of the jurisprudence leads to the conclusion that the trial court was within its discretion and authority in reaching its finding that damage did occur. However, the defendants argue that the amount of damages awarded should be adjusted on appeal.

MENTAL ANGUISH
The defendants contend that no damages should have been awarded to the farm manager, Robbie Howard, for mental anguish. The defendants assert that the crop damage was sustained by 1900 Partnership, a separate juridical entity, and that Howard has no standing to claim mental anguish for damage to the partnership property. This argument has merit.
A partnership is a juridical person, distinct from its partners. LSA-C.C. Art. 2801. The proper party to assert the rights of a partnership is the partnership itself. Peck & Vantine v. Hebert, 589 So.2d 57 (La.App. 1st Cir.1991). In this case, the 1900 Partnership was composed of several corporations. Mr. Howard was a shareholder in some of the corporations forming the 1900 Partnership. It is well settled that the shareholders of a corporation do not have standing to sue for mental anguish and attendant damages for wrongful acts committed against the corporation. L & L Industries v. Progressive National Bank, 535 So.2d 1156 (La.App.2d Cir.1988); Bolanos v. Madary, 609 So.2d 972 (La.App. 4th Cir. 1992). The plaintiffs' suit is based upon damage to a cotton crop owned by a partnership. The partnership is the proper party to assert any claim for damages to partnership property, not Mr. Howard. Further, as a shareholder in some of the corporations forming the partnership, Mr. Howard is yet another step removed from standing to assert a claim for mental anguish. Therefore, the defendants are correct in arguing that Mr. Howard has no standing to assert an individual claim for mental anguish arising from damage to the partnership's crop.
However, even if standing was proper in this case, Mr. Howard would still not be entitled to recover for mental anguish under the facts presented here. Mr. Howard asserted that he had to work many extra hours in order to salvage the damaged cotton crop and that he experienced worry and stress regarding the possible loss of the crop. While rejecting Mr. Howard's argument that he should be compensated for extra effort expended in salvaging the damaged cotton crop, the trial court found that Mr. Howard was entitled to recover for mental anguish. The trial court noted that the jurisprudence holds that such a claim is not compensable. The trial court expressed disagreement with this jurisprudential rule, and made an award of damages to Mr. Howard for mental anguish. In so doing, the trial court erred.
An award for mental anguish allegedly resulting from property damage is permissible only when the property is damaged by (1) an intentional or illegal act; (2) by an act for which the tortfeasor will be strictly or absolutely liable; (3) by acts constituting nuisance; or (4) when the owner is present or nearby and suffers psychic trauma as a result. Freyou v. Iberia Parish School Board, 94-1371 (La.App. 3d Cir. 5/3/95), 657 So.2d 161; Blache v. Jones, 521 So.2d 530 (La.App. 4th Cir.1988).
Mr. Howard has failed to establish, according to these guidelines, that he is entitled to an award for mental anguish. The crop was not damaged by an intentional or illegal act, the tortfeasor is not strictly liable, nor did the acts involved constitute a nuisance. Further, Mr. Howard was not the owner of the *812 damaged crop and did not suffer psychic trauma as a result of the damage.
Every incident of property damage is necessarily accompanied by some degree of worry and consternation. The owner of damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to a physical injury, directly resulting from the property damage. Elston v. Valley Electric Membership Corporation, 381 So.2d 554 (La. App.2d Cir.1980); Thompson v. Simmons, 499 So.2d 517 (La.App.2d Cir.1986). Mr. Howard failed to prove that he suffered a psychic trauma due to this crop damage sufficient to entitle him to recover for mental anguish. Mr. Howard suffered only the degree of worry that would normally be associated with damage to the cotton crop he managed, but did not own. Accordingly, we reverse that portion of the trial court judgment awarding damages to Mr. Howard for mental anguish in the amount of $5,000.

MITIGATION OF DAMAGES
The defendants argue that no damages should have been awarded to the 1900 Partnership for Field 34. This field suffered the most severe damage from the application of the chemicals. Most of the cotton plants in this field were killed, producing no cotton at all. The defendants offered to replant the field with either cotton or soybeans, but this offer was refused by the Partnership. The defendants argue that because the plaintiffs failed to mitigate their losses with respect to this field, no damages should be awarded. This argument is meritless.
The doctrine of mitigation of damages applies in this state. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968). This doctrine imposes on the injured party a duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after the injury has been inflicted. The care and diligence required of him is the same as that which would be required by a man of ordinary prudence under like circumstances. He need not make extraordinary efforts or do what is unreasonable or impractical in his efforts to minimize the damages, but his efforts to minimize them must be reasonable and in accordance with the rules of common sense, good faith, and fair dealing. Aultman v. Rinicker, 416 So.2d 641 (La.App.2d Cir. 1982). While an injured person must use reasonable diligence and ordinary care under the circumstances to minimize his damages, this principle will not be applied to restrict an injured person's recovery when the injured person is required to make substantial expenditures of his own funds and to incur substantial risk in order to avoid the consequences of the tort. Aultman v. Rinicker, supra.
In this case, the defendants offered to replant the 1900 Partnership's field with either cotton or with soybeans. The Partnership refused this offer because it was too late in the year to begin a cotton crop and because the ground had been treated with a pre-emergence herbicide which is appropriate for cotton but which would have been detrimental to the growth of the soybeans. Under these circumstances, we find that the 1900 Partnership acted reasonably in refusing the defendants' offer to replant the field that was a total loss. See Aultman v. Rinicker, supra. Accordingly, the trial court was correct in refusing to apply the principle of mitigation to restrict the Partnership's recovery of damages.

ASSESSMENT OF FAULT
The defendants argue that the trial court erred in failing to find that Howard Aviation was partially responsible for the damage to the 1900 Partnership's crop because that company was also applying chemicals close to the Partnership's property at the time this damage occurred. The defendants argue that any damage award made to the Partnership against the defendants should be reduced by 50% assessment of fault to Howard Aviation. This argument is meritless.
An appellate court may not set aside a trial court's factual finding unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, *813 reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Rosell v. ESCO, supra. However, where documents or objective evidence so contradict the witness' story or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, supra.
In assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Chambers v. Graybiel, 25,840 (La.App.2d Cir. 6/22/94), 639 So.2d 361.
In the present case, the trial court found that, even though there was a conflict in the evidence, no action by Howard Aviation resulted in damage to the 1900 Partnership's cotton crop. In its well reasoned and extensive reasons for judgment, the trial court evaluated the testimony presented by various witnesses regarding the issue of whether chemical spraying by Howard Aviation contributed to the damage to the 1900 Partnership crop. The trial court noted that, although Carl Donham, an agricultural-environmental specialist with the Louisiana Department of Agriculture, would have assessed fifty percent fault to Howard Aviation simply because it made chemical applications on the day the damage to the plaintiffs' crop was sustained, other testimony in the record did not support that finding. The trial court found that Mr. Donham was not able to track aerial spraying onto the 1900 Partnership crop from Howard Aviation's spraying. Further, the court noted that Charles R. Davis Jr., the pilot for Howard Aviation, stopped flying early in the morning when he observed the chemical spray beginning to drift. Mr. Davis and Danny and Charles Crawford, from the nearby Three Finger Farms, all reported that Grady Wilson of Bubber, Inc. was still flying when Charles Davis stopped. The trial court further noted that L.B. Davis, a private agricultural consultant, testified that he was unable to track any drift of chemicals from the field sprayed by Howard Aviation onto the 1900 Partnership crop. The court noted that L.B. Davis further testified that the drift onto the 1900 Partnership crop came from the fields being sprayed by Grady Wilson for Bubber, Inc.
Based upon these factors, the trial court found that Grady Wilson's aerial spraying was the sole cause of the damage to the 1900 Partnership crop. We find that the trial court based its determination on reasonable evaluations of credibility and reasonable inferences of fact. The trial court's assessment of 100% fault to the defendants is not clearly wrong or manifestly erroneous and accordingly, is affirmed.

PARTIAL NEW TRIAL
In their answer to the appeal, the 1900 Partnership contends that the trial court erred in its calculation of the damage award. It argues that the trial court arbitrarily assigned damages and did not assign damages for any cotton that was not developed beyond the fifth true leaf. The court found that, as to this cotton, the damage was cosmetic only and there was no yield damage.
The Partnership argues that a motion for partial new trial should have been granted on the issue of damages to receive further testimony regarding the amount of damage sustained by the cotton that was not developed to the true fifth leaf. The 1900 Partnership secured another expert who would have testified as to the effects of the chemical on cotton at this stage of development. However, the trial court refused to grant the partial new trial to allow the expert to testify. The Partnership's argument in this regard is without merit.
LSA-C.C.P. Art. 1971 provides that a new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all *814 parties or issues, the judgment may be held in abeyance as to all parties and issues.
LSA-C.C.P. Art. 1972 provides that a new trial may be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law an evidence, when the party has discovered, since trial, evidence important to the cause which he could not, with due diligence, have obtained before or during trial, or when jury misconduct has occurred. LSA-C.C.P. Art. 1973 provides that a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
The 1900 Partnership argues that a new trial was warranted as to the issue of damages because the trial court ruling in this regard was contrary to law and evidence. The Partnership contends that the trial court erred in finding that no damage or yield loss occurred as to cotton that had not developed beyond the fifth true leaf stage. It also argues that the trial court should have granted a new trial on discretionary grounds to allow the testimony of Dr. Charlie Guy, of the University of Arkansas. Dr. Guy was a newly discovered expert in the field of chemical damage to cotton and the 1900 Partnership sought to introduce his testimony to dispute the trial court's finding that the chemical damage to the cotton not developed to the fifth true leaf stage was cosmetic only and did not result in a lowering of the cotton yield in those plants.
We find that the trial court did not err in refusing to grant the 1900 Partnership a partial new trial on the issue of damages. As stated above, the trial court has great discretion in assessing damages and the trial court's finding in this regard will not be reversed on appeal in the absence of a clear abuse of discretion. The trial court's finding that cotton plants not developed to the true fifth leaf stage suffered only cosmetic damage is supported in the record by the testimony of Stephen H. Crawford, a scientist at the Northeast Louisiana Research Station, a branch of the Louisiana State University Agriculture Center, and Dr. David Parvin, a professor at Mississippi State University. These experts testified that the cotton plant begins to set squares which produce flowers and ultimately cotton bolls at the fifth to seventh true leaf stage. If the chemical damage from STAM occurs at the fourth true leaf stage or less, the damage will be relatively insignificant to the growth cycle of the plant.
The Partnership's attempt to introduce additional evidence on the issue of damages after the conclusion of the trial was properly denied by the trial court. We do not find, as contended by the Partnership, that the trial court's assessment of damages was contrary to the law and evidence. Therefore, the 1900 Partnership's attempt to introduce additional evidence on the issue of damages after the conclusion of the trial was properly denied and will not be reversed on appeal.
Although the Partnership did not argue that the testimony of its new expert should be introduced as newly discovered evidence, no explanation was offered as to the failure of the Partnership to include this expert's testimony in its case in chief.
Accordingly, for the reasons stated above, we affirm that portion of the trial court judgment denying the 1900 Partnership's motion for a partial new trial on the issue of damages.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment awarding the 1900 Partnership $33,923.11 in damages to its cotton crop, subject to a credit of $4,200 to the defendants for aid in harvesting the cotton crop and installing a culvert. We affirm that portion of the trial court judgment denying the 1900 Partnership's motion for partial new trial on the issue of damages.
We reverse that portion of the trial court judgment awarding Robbie Howard $5,000 in damages for mental anguish.
The trial court judgment is affirmed in all other respects and costs in this court are assessed one-half to the plaintiffs and one-half to the defendants.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
*815 APPLICATION FOR REHEARING
Before SEXTON, BROWN and STEWART, JJ., and SAVOIE and CLARK, JJ., Pro Tem.
Rehearing denied.