MOORE, J.
11 Jorge Carrion appeals a judgment finding that he failed to own or maintain compulsory motor vehicle liability security in violation of La. R.S. 32:866 A(l) (the “no pay, no play” statute) and could not recover damages from his tortfeasor’s insurer, National Automotive Insurance Company (“National”). He urges a good faith exception to the statute. For the reasons expressed, we affirm.

Factual Background

The accident occurred shortly after midnight on August 2, 2003. Carrion was exiting the parking lot of Blockbuster Video on Mansfield Road. With a green light, he pulled onto Jewella Road in his Plymouth Grand Voyager van. At that moment, Macy Sandifer was driving a Pontiac Grand Am south on Mansfield Access Road, which has only a stop sign at this intersection. Although she insisted she stopped and the coast was clear, Ms. San-difer T-boned Carrion’s van about halfway through the access road.
The main issue at trial was whether Carrion was carrying compulsory auto insurance. His brief describes him as “an Argentine émigré [who] speaks only minimally passable English and generally relies on an interpreter for assistance with personal business matters.” After he bought the van in 2002, he went to Caddo Insurance Agency on Linwood Avenue. *786 Caddo Insurance’s office manager, Jewel Robertson, sold him a policy with Safeway Insurance Company of Louisiana (“Safeway”) which could be renewed monthly. He listed as his address a house on Kent Avenue, where he was living with his friend and interpreter, Sacora Dupres. In fact, after his initial visit to Caddo Insurance in December 2002, he usually sent Ms. | ¡¿Dupres with a money order to pay his renewal premiums. Sometime in early 2003, he moved out of Ms. Dupres’s house and into an apartment on Red Fox Trail but did not tell Caddo Insurance about his new address. However, he continued to stop by Ms. Dupres’s house almost daily and get his mail.
Carrion’s last monthly policy with Safeway was set to expire July 28, 2003. Over one month earlier, on June 27, Safeway sent Carrion a notice that his policy would not be renewed at its expiration because “your agent no longer represents our company.” This was mailed to Carrion at the Kent Ave. address, but neither he nor Ms. Dupres recalled receiving it. A copy was also mailed to Caddo Insurance. The agency’s president, John W. Brumfield Jr., testified that his license to operate had expired some years earlier, but that he continued to operate until his final application for renewal was rejected in July or August 2003.
At any rate, Ms. Dupres went to Caddo Insurance’s office on July 21 and made a premium payment to renew Carrion’s policy. Ms. Robertson accepted the money order and forwarded it to Safeway. She testified that as far as she knew, he would be insured for another month; only later did she receive from Safeway a “formal letter stating they were no longer doing business with Caddo Insurance * * * due to the losses.” On July 25 Safeway returned the cheek to Caddo Insurance with the notice: “The attached payment is being returned to you because * * * the policy has been set for non-renewal.” Ms. Robertson testified that she phoned all her former Safeway policyholders and asked them to come in and make other [¡¡arrangements, but she did not specifically recall phoning Carrion.
Carrion made no other arrangements before the accident occurred on August 2.
Carrion filed the instant suit in January 2004 against Ms. Sandifer and National, and Safeway and Caddo Insurance. He alleged that Safeway had issued a policy which was in full force and effect at the time of the accident; alternatively, he alleged that Safeway and Caddo Insurance failed to insure him after receiving all necessary information and payment.

Action of the District Court

After receiving the evidence outlined above, the district court rendered judgment finding that Carrion did not have a valid policy with Safeway, owing to “a proper notice of non-renewal forwarded June 27, 2003, effective July 18, 2003, and the July 25, 2003 return of premium paid July 21, 2003.” The court further found that Ms. Sandifer was solely at fault in causing the accident and that her car was insured by National. The court fixed Carrion’s special damages at $3,848.24 and general damages at $5,000, for a total of $8,848.24. Neither the allocation of fault nor the quantum has been appealed.
The court then held that the “no pay, no play” statute prevented Carrion from recovering the first $10,000 of his bodily injury and the first $10,000 of his property damage from Ms. Sandifer and National. However, the court found that Caddo Insurance held itself out to the public as an insurance agency and failed to secure a policy for Carrion, resulting in his inability to recover damages from Ms. Sandifer and National. The court | ¿therefore rendered judgment against Caddo Insurance for *787 $8,484.24, but rejected the claims against all other defendants.
Carrion has appealed.

Applicable Law

Louisiana’s “no pay, no play” law, La. R.S. 32:866, provides in pertinent part as follows:
§ 866. Compulsory motor vehicle liability security; failure to comply; limitation of damages
A. (1) There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.
[[Image here]]
(3)(a) The limitation of recovery provisions of this Subsection do not apply if the driver of the other vehicle:
(i) Is cited for a violation of R.S. 14:98 as a result of the accident and is subsequently convicted of or pleads nolo con-tendere to such offense.
(ii) Intentionally causes the accident.
(iii) Flees from the scene of the accident.
(iv) At the time of the accident, is in furtherance of the commission of a felony offense under the law.
[[Image here]]
The purpose of the “no pay, no play” law is to reduce the premiums charged for motor vehicle insurance and to discourage the ownership and operation of uninsured motor vehicles. Bryant v. United Services Auto. Ass’n, 2003-3491 (La.9/9/04), 881 So.2d 1214.
| ¡¡Proof of mailing of the notice of cancellation, or of the intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice. La. R.S. 22:636.1 F. Proof of mailing to the named insured at the address on the policy is sufficient to establish a rebuttable presumption of delivery which can be overcome by affirmative proof of non-delivery. Snow v. Mid-American Indem. Co., 557 So.2d 1073 (La.App. 2 Cir.1990).

The Parties’ Contentions

By one assignment of error, Carrion urges the district court erred in failing to apply a good faith exception to R.S. 32:866 “for a motorist who complied with all requirements of the insurer, paid his premium timely but his premium was returned and the policy was cancelled by the insurer because the producing agent/agency allowed his/its license to write coverage to lapse in 1995.” He argues that the obvious intent of the statute is to encourage compliance with compulsory insurance; hence, the only persons who should be penalized are those who fail to obtain it. He contends that as a penal statute § 866 should be strictly construed: by choosing the term “fails to own or maintain,” the legislature implicitly approved a good faith exception. Otherwise, he suggests, the legislature would have simply said, “does not have compulsory motor vehicle liability security.” He argues that the law is replete with good faith exceptions, notably La. R.S. 22:1220, 658 and 657, under which an insurer is penalized for failing to settle claims if it acts in bad faith. He reiterates that he did everything he could to obtain coverage, but was frustrated by Caddo | Jnsurance’s misconduct. Finally, he argues that National should not receive a windfall simply because of Caddo Insurance’s misdeeds.
*788 National responds that R.S. 32:866 A(l) is clear as written; the fact that Carrion did not have insurance is the same as that he failed to have it. Further, National contends that Safeway gave Carrion sufficient notice of non-renewal by mailing it to his last known address, in compliance with R.S. 22:636.1 D(l).
Safeway responds that R.S. 32:866 A(3) sets forth the only applicable exceptions to “no pay, no play,” and there is none for “an insured motorist whose agent failed to acquire liability coverage for him.” Safeway also maintains that it properly notified Carrion of his non-renewal and Caddo Insurance of its lapsed license, so neither one was truly in good faith.
Caddo Insurance has not filed a brief. Apparently Mr. Brumfield closed the agency after his license was revoked.

Discussion

In seeking a good faith exception to the “no pay, no play” statute, Carrion concedes that he did not have a valid policy with Safeway, and the record confirms this. Without objection, Safeway introduced into evidence Exhibit S-2, a copy of the notice of non-renewal marked “Date of mailing 6/27/03” and addressed to Carrion at the Kent Ave. address. This satisfied Safeway’s burden of proof under R.S. 22:636.1 D(l). Neither Carrion, nor Ms. Dupres, who still lived there, could recall receiving it; however, Carrion admitted that he had moved without notifying Safeway of his new address. The district court was not plainly wrong to find this evidence insufficient to j7rebut Safeway’s prima fa-cie showing. Snow v. Mid-American Indem. Co., supra; Aultman v. Rinicker, 416 So.2d 641 (La.App. 2 Cir.1982).
We have closely considered Carrion’s contention that the phraseology of § 866 A(l), “fails to own or maintain,” denotes something less than “does not have,” and thus would penalize only a truly negligent owner or operator. We perceive no such distinction. In fact, in Costly v. Batiste, 01-496 (La.App. 5 Cir. 11/14/01), 802 So.2d 752, the court interpreted the statute as follows:
It [R.S. 32:866 A(l)] mandates that a driver who does not own or maintain a policy of liability insurance is precluded from collecting damages for the first $10,000 of either bodily injury or property damage sustained in an automobile accident.
(Emphasis added.)
The court obviously read fails to as equivalent to does not, and we find this a fair and reasonable construction. We decline to accept the proposition that because Carrion did not own or maintain insurance, he somehow did not fail to do so.
The principal thrust of Carrion’s argument is that the court should engraft onto § 866 a good faith exception for someone who complied with every requirement for obtaining mandatory insurance but was frustrated by the misconduct of his agent. The statute contains no such exception, even though the legislature was aware of the need for certain other exceptions enacted in § 866 A(3)(a). To add a good faith exception, while surely equitable on the instant facts, strikes us as a policy decision best left to the legislature, not to this court.
IsThe legislature was plainly aware that in certain situations, negligent or unscrupulous insurance agents would collect premiums yet fail to apply them the policies. This is precisely what happened in Costly v. Batiste, supra. Costly contended that “he went, in good faith, to ABC [the agency] to obtain insuranee[,] paid approximately $400.00 and thought ABC placed him with Patterson [the insurer].” For some reason, ABC never forwarded the premium. The district court granted a *789 summary judgment in favor of his tortfea-sor’s insurer, State Farm, as Costly had no insurance. The Fifth Circuit affirmed, noting that Costly’s potential claim against ABC was not relevant to State Farm’s liability. In short, § 866 appears to contemplate that the good faith plaintiff may pursue his insurance agent — which is precisely what happened here. Although the prospects of recovery from Caddo Insurance appear minimal, we will not supply equity where the statute contemplates a remedy at law.
Finally, we are not persuaded by the analogy to La. R.S. 22:1220, 658 and 657. These statutes hold the insurer to a standard of good faith and penalize it for arbitrary and capricious failure to pay claims; they do not create equitable remedies for third party claimants who feel they acted in good faith.[1]
We decline to create a good faith exception to R.S. 32:866. Carrion’s able argument raises policy considerations better addressed to the legislature |9than to this court.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are to be paid by the appellant, Jorge Carrion.
AFFIRMED.
DREW, J., dissents with written reasons.

. Section 1220 explicitly imposes upon an insurer the duty of "good faith and fair dealing" in adjusting the claims of its insured and defines a breach of that duty as failing to pay a claim timely "when such failure is arbitrary, capricious, or without probable cause.” R.S. 22:1220 A, B(5). Section 658 imposes upon an insurer the duty to settle third-party claims within a prescribed time and imposes a penalty if the failure to do so is arbitrary, capricious or without probable cause. R.S. 22:658 B(l), (4). Section 657 does not apply to personal vehicle damage claims, but it penalized insurer who fails to pay a claim without "just and reasonable grounds.” R.S. 22:657 A.