# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-521


EARL IVORY

VERSUS

SAFEWAY INSURANCE COMPANY
OF LOUISIANA, ET AL.


**********

APPEAL FROM THE
EUNICE CITY COURT
PARISH OF ST. LANDRY, NO. 30,269-18
HONORABLE MARK T. HOYCHICK, CITY COURT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Donald Lynn Mayeux**
**Attorney at Law**
**Post Office Drawer 1460**
**Eunice, Louisiana 70535**
**(337) 457-9610**
**Counsel for Plaintiff/Appellee:**
       **Earl Ivory**

**Michael Wayne Landry**
**Staff Counsel for Safeway Insurance**
**Post Office Box 92807**
**Lafayette, Louisiana  70509**
**(877) 323-8040**
**Counsel for Defendants/Appellants:**
> **Safeway Insurance Company of Louisiana**
> **Jake Vidrine**

**KEATY, Judge.**

Defendants appeal the trial court's judgment regarding liability and general damages. For the following reasons, the trial court's judgment is affirmed.

**FACTS & PROCEDURAL HISTORY**

This personal injury matter stems from an automobile collision on June 4, 2018, in the Wal-Mart parking lot in Eunice, Louisiana, between Earl Ivory and Jake Vidrine. On July 12, 2018, Ivory filed a petition for damages against Vidrine and his automobile insurer, Safeway Insurance Company of Louisiana (hereinafter collectively referred to as Defendants). Ivory alleged he was driving his 1989 red Chevrolet truck when Vidrine, who was driving a 2010 white Dodge Charger, was traveling at a high rate of speed and crashed into the driver's side door of Ivory's truck. Ivory claimed that Vidrine failed to keep a proper lookout, drove carelessly and recklessly, failed to yield to the right of way, failed to adequately slow down while driving through a parking lot, failed to stop before crashing into Ivory's truck, failed to exercise the last clear chance to avoid the accident, failed to do what Vidrine should have done and see what he should have seen under the circumstances, and any other acts of negligence that would be shown at trial. According to his petition, Ivory sustained personal injuries to his head, neck, back, arms, and legs, which required medical treatment. Ivory sought damages for past, present, and future pain and suffering, disability, mental anguish, anxiety, medical expenses, loss of use and enjoyment, and depreciation of the value of his truck. Defendants answered the petition and disputed liability, causation, damages, coverage, ownership, and model year of the truck operated by Ivory. Defendants further asserted the affirmative defense of "no pay, no play."

Following a one-day bench trial on April 3, 2019, the trial court denied Defendants' affirmative defense of "no pay no play." It determined that Ivory owned

and operated a 1992 Chevy S-10, which was insured by State Farm Mutual Automobile Insurance Company on the date of the accident. The trial court ruled the accident resulted from the comparative fault of both Ivory and Vidrine and assessed each driver fifty percent of the fault. It held that Ivory sustained $20,000.00 in general damages, $2,132.90 in medical expenses, and $1,500.00 in property damages. In light of its finding of comparative fault, the trial court ordered Defendants to pay Ivory $10,000.00 in general damages, $1,066.45 in medical expenses, and $750.00 in property damages, plus judicial interest from date of judicial demand until paid. It set the expert witness fee for the testimony of Dr. Reginald Segar to $1,000.00, as court costs, and ordered Ivory and Defendants to each pay one-half of all court costs. The trial court's judgment was signed on April 22, 2019. It is from this judgment that Defendants appeal.

On appeal, Defendants assert the following assignments of error:

(1)     [T]he trial judge committed legal error in determining that plaintiff proved he was the owner of the vehicle involved in the accident, after the trial judge correctly factually determined that the vehicle involved in the accident was a 1992 Chevy S-10.

(2)     [T]he trial judge committed legal error in determining that plaintiff was covered by auto liability insurance after the trial judge correctly factually determined that the vehicle involved in the accident was a 1992 Chevy S-10.

(3)     [T]he trial judge committed legal error in awarding any compensatory damages since the plaintiff was uninsured at the time of the accident and the damages for bodily injury did not exceed $15,000 and the amount for property damage did not exceed $25,000.

(4)     [T]he trial judge committed legal error in failing to determine that Ivory was one hundred percent at fault in causing this accident.

2

In *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La. 10/30/00), 773 So.2d 670, 680-81, the Louisiana Supreme Court explained the standard of review regarding comparative fault determinations as follows:

> As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. [*Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607]. Therefore, an appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. *Clement*, 666 So.2d at 611; *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La.1977).

## DISCUSSION

### I.      Liability

In their fourth assignment of error, Defendants contend the trial court committed legal error in failing to determine Ivory was one hundred percent at fault in causing the accident. The trial court determined the accident resulted from the comparative fault of both Ivory and Vidrine and assessed each driver fifty percent of the fault.

The trial court's oral reasons supporting its allocation of fault provides:

> As to liability this is one of those accidents where you kind of shake your head like how [the] heck did this happen? You [have] two adults driving in a parking lot with no impediments to vision and yet they run into each other. There nobody, nobody ran a stop sign.

> [W]e've got an independent witness who believed that Mr. Vidrine was driving in a reckless [manner] at least when he came around and almost hit [the witness's] trailer in her opinion. And maybe that did scare her and got her a little excited. But then she says that the [sic] did slow down for the curve.

> The position of the vehicle in the photographs does show that he was in the proper lane of travel at that point. But I don't understand how you did[n]'[t] see the red truck coming to that spot, stopping and then pulling out such that the accident wasn't avoided. And I don't understand how Mr. Ivory who stopped and presumably looked right

3

and left[] didn't see a white car coming and then continued on into the path of the vehicle. Therefore, I'm finding fault at 50/50. I think that's the right thing to do in this matter.

The trial court's determination of comparative fault was based upon witness testimony, a witness statement, medical records, photographs, and other evidence regarding the accident submitted into evidence at trial.

On review, the record contains Ivory's trial testimony, which reveals he was seventy-eight years old at the time of trial. Ivory testified that on the day of the accident, he finished shopping at Wal-Mart when he got into his truck in the parking lot. He slowly drove towards the back of the parking lot where the oak trees were located. Ivory stopped at the end of the lane and then proceeded, at which point he was struck by Vidrine's vehicle. Ivory revealed that he never saw Vidrine's vehicle before the crash. He explained that Vidrine must have approached him from the opposite direction because Vidrine hit the front of Ivory's truck. Ivory recalled that the impact from Vidrine's vehicle "started on the front fender, the front left fender. He came on back to the left door all the way back." Ivory testified that a woman subsequently approached his window and gave him a piece of paper indicating that she witnessed the accident.

According to trial testimony, the woman who gave Ivory a piece of paper was Nancy Cordell. Cordell's testimony reveals that, on the day of the accident, she and her dogs were riding with her son in his vehicle. Attached to the vehicle was a trailer carrying Cordell's new car. On their way home to DeRidder, they stopped at the Wal-Mart in Eunice. Cordell took her dogs to use the bathroom by the oak trees when a white car, driven by Vidrine, caught her attention because it was "coming down and almost" hit the back of the trailer carrying Cordell's new car. Cordell explained that Vidrine continued traveling towards the oak trees while crossing the parking lines. During that time, Cordell also spotted Ivory in his vehicle. She

4

revealed that Ivory waved to her, she waved back to him, Ivory "stopped . . . and then he started to go[,] and the white car came this way and hit him." She witnessed the crash and opined that Vidrine was traveling at approximately twenty-five miles per hour. According to Cordell's testimony, Vidrine never applied his brakes or performed any maneuver to avoid the accident.

Cordell testified that following the collision, Vidrine kept telling Ivory that it was his [Ivory's] fault. She noted that Vidrine's father, who showed up after the accident, also kept telling Ivory that it was his fault. Cordell explained that Vidrine and his father were being very rude and badgering Ivory. She opined that the collision resulted from Vidrine's carelessness. After the accident, Cordell approached Ivory and handed him a piece of paper containing her name, address, and phone number so that he could give it to the police officers to inform them that she witnessed the accident. Cordell's statement, which was submitted into evidence and in the record on review, states that she witnessed the accident that occurred when a "white Dodge Charger was racing around my truck and car and wasn't looking where he was racing off too [sic]. Red truck was already in motion when white charger hit him."

Vidrine, who was twenty years old at the time of trial, testified that he was employed by Wal-Mart. On the day of the accident, he got into his Dodge Charger in the parking lot and proceeded northwards. He noticed Cordell walking her dogs and then he executed a sharp right turn. Vidrine revealed that he was not in a rush and was traveling approximately fifteen miles per hour when Ivory "came out in front of" him and caused the collision. He did not see Ivory prior to impact. Vidrine explained that when Ivory "came in front of" him, Vidrine hit his brakes for about a minute although it was too late. Vidrine admitted that following the accident, he was angry and accused Ivory of being at fault. After approximately five minutes,

5

however, Vidrine asked Ivory if he was okay. Vidrine acknowledged that his father subsequently arrived at the accident scene; however, he did not fuss with Ivory. Rather, his father asked if Ivory was okay.

Based on the foregoing, the trial court heard the testimony and evidence and weighed the credibility of the witnesses. Considering the evidence presented, the trial court could reasonably have concluded that Vidrine and Ivory were equally responsible for causing the collision. After reviewing the entire record, we cannot say the trial court's allocation of fault was manifestly erroneous. Therefore, we will not disturb the result, and this assignment of error lacks merit.

## II. Vehicle Identification Number

In their first assignment of error, Defendants contend the trial court committed legal error in determining that Ivory proved he owned the truck involved in the accident, a 1989 Chevy S-10, after the trial court factually determined that the truck involved in the accident was a 1992 Chevy S-10.

In its oral reasons, the trial court discussed the year Ivory's truck was manufactured, as follows:

> I believe Mr.[] Corney. I think he's a very sincere and honest guy. But I think that it goes beyond that. I also believe Mr. Ivory. And I think this is, this is one of those deals where we [have] a put together vehicle that Mr. Ivory did and maybe unequivocally was not done in the proper way. And whatever Mr. Chaumont did to get title to it for him we'll never know. . . . [S]omehow he got title and insurance on a vehicle that probably is 1992. I think the evidence does support more that it is a 92 vehicle than an 89.

The trial court's determination that Ivory's truck was manufactured in 1992 rather than 1989 was based upon trial testimony, photographs, and insurance documents submitted into evidence at trial.

On review, the record contains the registration and insurance papers, which belong to a 1989 Chevy S-10. On the other hand, trial testimony indicates Ivory's

6

truck contained a Vehicle Identification Number (VIN), located in the glove compartment, belonging to a 1992 Chevy S-10. Ivory testified that he owned a junk yard where he and his sons collected and put together vehicles. He explained that he and his son bought the frame or "shell" of the truck at issue from John Chaumont approximately twenty years ago. Ivory and his son worked on it and replaced the door, glove compartment box, and steering wheel. Ivory explained he was provided a registration form by Chaumont, who is now deceased, indicating that the truck was a 1989 Chevy S-10. As such, Ivory took those papers to a State Farm agent who insured the truck that was damaged in this matter.

Ivory's testimony was confirmed by trial testimony from his son, Eugene Ivory. Eugene testified that he replaced the glove compartment. He testified the replaced glove compartment contained a serial number from a different truck. Eugene acknowledged that the state troopers were unable to find a VIN number on the truck at issue. He explained that VIN numbers are usually located on the dash, door, fenders, or frame.

Defendants' witness, Jason Corney, also testified at trial. Corney was accepted by the trial court as an expert in personal automobile appraisal for purposes of insurance claims. He examined Ivory's truck and determined the VIN number in the glove compartment did not match the VIN number contained on the truck's registration. According to Corney, the glove compartment's VIN number belonged to a 1992 truck whereas the VIN number on the registration papers provided by Ivory belonged to a 1989 Chevy S-10.

Based on the foregoing, the trial court heard the evidence and weighed the credibility of the witnesses. Considering the evidence presented, the trial court reasonably could have concluded that the truck at issue was registered as a 1989 truck and contained a glove compartment taken from a 1992 truck. It could have

7

also reasonably concluded that this same truck belonged to Ivory. Therefore, we will not disturb the result, and this assignment of error lacks merit.

## III. Insurance

In their second assignment of error, Defendants contend the trial court committed legal error in determining that Ivory was covered by automobile liability insurance after the trial court factually determined that the truck involved in the accident was a 1992 Chevy S-10. According to Defendants, the liability insurance policy submitted into evidence belonged to a 1989 Chevy S-10 whereas the vehicle involved in the accident was a 1992 Chevy S-10. Defendants assert there is no proof of liability insurance such that the "no pay, no play" defense should reduce Ivory's award to zero.

Louisiana's "no pay, no play" law, La.R.S. 32:866, provides in pertinent part:

> A. (1) There shall be no recovery for the first fifteen thousand dollars of bodily injury and no recovery for the first twenty-five thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.

The purpose of the "no pay, no play" law is "to reduce the premiums charged for motor vehicle insurance and to discourage the ownership and operation of uninsured motor vehicles." *Bryant v. United Servs. Auto. Ass'n*, 03-3491, 04-28, p. 14 (La. 9/9/04), 881 So.2d 1214, 1222.

The trial court's determination that "no pay, no play" was inapplicable stems from witness testimony and other evidence presented at trial regarding the accident. In its oral reasons, the trial court explained:

> But I am not all convinced that the vehicle was uninsured. Because I don't think that State Farm would be let off the hook had Sta[t]e Farm [been] sued in this matter. The man paid insurance premiums on it. I haven't had anything to tell me otherwise on that. He did what the law of compulsory motor vehicle liability security law

says and he, I mean it's not he was trying to [commit] fraud and swap vehicles and that was the question I asked Mr. Corney and anybody else. And of course you had the opportunity to prove that so. That's not our situation. [We are] not having some kind of shell game where he's trying to pull something over on the insurance company or over on this court.

. . . I believe the vehicle was insured and I believe that. And that's my ruling that the vehicle was insured because of his good faith efforts to insure the vehicle at the time. He was not driving any other vehicle at the time and even though it had improper certificates of title or registration, I still believe that the insurance was on the vehicle properly. At least to the extent that the provisions of the no pay no play would not apply in this case.

On review, the record contains a Certificate of Title, which shows the date acquired as December 28, 2016, and the date issued as January 3, 2017. It was issued to Ivory for title to a 1989 red Chevrolet with a VIN number of 1GCBS14E1K2264303. The same VIN number appears on a State Farm automobile insurance policy and insurance card, also in the record, issued to Ivory for coverage of a 1989 Chevrolet S-10 pickup truck with a policy period of January 1, 2018 through July 1, 2018. Ivory's trial testimony reveals that this insurance and registration belonged to the truck involved in the accident at issue.

Based on the foregoing, the trial court heard the evidence and weighed the credibility of the witnesses. Considering the evidence presented, the trial court reasonably could have concluded that the truck involved in the accident is the same truck identified in the title and insurance documents. It was also reasonable for the trial court to conclude that the truck was insured at the time of the accident. Accordingly, we will not disturb the result.

We note Defendants' argument on appeal that this case conflicts with the holding in *Carrion v. Sandifer*, 40,880 (La.App. 2 Cir. 4/12/06), 926 So.2d 784, wherein the second circuit held the "no pay, no play" statute provided for in La.R.S. 32:866 does not allow a good faith exception to the requirement of liability coverage.

9

Defendants herein allege that because the trial court found Ivory's vehicle was a 1992 Chevy S-10, and since the insurance policy belonged to a 1989 Chevy S-10, it erroneously allowed a good faith exception to La.RS 32:866 in contravention to *Carrion* by concluding there was coverage since Ivory was in good faith.

We disagree as *Carrion*, 926 So.2d 784, is distinguishable from the facts of this case. In *Carrion*, the plaintiff was in an accident and thought he would be covered under his automobile liability policy. Before his accident, the plaintiff had paid his premium to keep his policy effective. Unbeknownst to the plaintiff, the agent could not accept the premium because he lost his license to do business. At trial, the insurer submitted into evidence a copy of the notice of non-renewal mailed to the plaintiff before expiration of the policy and prior to the car accident. Thus, the policy was not in effect on the date of the plaintiff's accident. In this case, Ivory's insurance policy was in effect and provided coverage for his truck on the day the accident occurred. Accordingly, this assignment of error is without merit.

## IV. Damages

In their third assignment of error, Defendants contend the trial court committed legal error in awarding compensatory damages since Ivory was uninsured at the time of the accident and the damages for bodily injury did not exceed $15,000.00 and the amount for property damage did not exceed $25,000.00. Defendants contend the trial court incorrectly awarded $20,000.00 in general damages for a treatment period of approximately nine months after the accident because it is excessive and fails to take into account the pre-accident pain.

General damages, which include pain and suffering, physical impairment and disability, and loss of enjoyment of life, are speculative in nature and incapable of being fixed with mathematical certainty. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. The

fact finder's award of general damages is subject to the abuse of discretion standard of review. *Simon v. Lacoste*, 05-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102. A general damage award should only be increased or reduced if it is beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff under the particular circumstances of the case. *Id.* In making that determination, the appellate court should not rely on a comparison of prior awards in cases with similar medical injuries but should rely on the primary considerations of the duration and severity of the plaintiff's pain and suffering. *Guillot v. Doe*, 03-1754 (La.App. 3 Cir. 6/30/04), 879 So.2d 374.

In this case, the trial court explained the following in its oral reasons: "Clearly Mr. Ivory had a pre[-]existing back condition along with other problems. I didn't hear anything about a pre-existing neck or a rib condition. He was still hurting after ten months[.] Sounds like he's still having problems now." The trial court awarded $20,000.00 in general damages.

The trial court's award of general damages was based upon the testimony and medical evidence presented at trial. Our review of the record reveals that Dr. Reginald Segar, a family physician, testified on Plaintiff's behalf as a family practice medical expert. Dr. Segar testified that he examined Ivory on June 11, 2018. Ivory presented with complaints of headaches, dizziness, and pain in his ribs, neck and back. Ivory informed Dr. Segar that he was in an automobile accident a few days earlier which caused him pain in his ribs, neck, and back. Dr. Segar recalled Ivory was in a previous accident years earlier in 2012 that resulted in back pain. Dr. Segar opined, however, that the instant accident increased Ivory's back pain. Upon examination, Ivory exhibited tenderness in his neck, shoulders, and back with decreased range of motion along with tender ribs. Dr. Segar's impression was a cervical trapezius strain and rib injury and aggravation of the lower back with

headaches, and he prescribed anti-inflammatory medication. Degenerative disc disease was noted on subsequent x-rays performed on Ivory. Dr. Segar opined that a car accident could have caused pain and aggravated his pre-existing condition. Dr. Segar revealed that Ivory expressed symptoms of continued neck and back pain on June 24, 2018, and more x-rays were ordered. On August 6, 2018, Ivory was still experiencing rib, neck, and back pain. Thereafter, Ivory continued presenting to Dr. Segar approximately every month through March 26, 2019. At his appointment on November 6, 2018, Dr. Segar opined that Ivory had reached maximum medical improvement even though he was still experiencing neck, back, and rib pain. On March 26, 2019, Dr. Segar discharged Ivory despite his continued complaints of pain.

Based on the foregoing, we cannot say that the trial court abused its discretion in awarding $20,000.00 in general damages.

With respect to special damages, Defendants allege the trial court erred in awarding the full medical expenses for treatment that consisted both of alleged accident-related injuries and heart problems that were not accident-related.

In *Simon*, 918 So.2d at 1104-05, this court recognized the following regarding awards of medical expenses:

> [W]hen a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." [*Esté v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857.] A factfinder errs if it fails to award the full amount of medical expenses incurred as a result of the accident and proven by a preponderance of the evidence. *Revel v. Snow*, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La. 2/2/96), 666 So.2d 1084.

In this case, the trial court awarded $2,132.90 in medical damages. On review, the record reveals that Ivory presented the following medical bills totaling approximately $2,132.90 for accident-related treatment: Dr. Segar, $1,250.00;

Acadian Medical Center, $863.59; and Bellard's Pharmacy, $19.35. Thus, Ivory introduced evidence of past medical expenses that were incurred during his periods of treatment for accident-related injuries. No evidence was offered to contradict these bills or to provide reasonable suspicion that they were incurred for an unrelated accident or occurrence.

We note Defendants' argument on appeal that some of the medical expenses were incurred for examinations and treatments on days where Dr. Segar treated Ivory for both accident-related damages and heart-related damages that were not caused by the accident. Dr. Segar addressed this issue at trial, stating that he maintains two separate records for a patient who is already being treated by Dr. Segar and is subsequently involved in an accident with injuries. In such instances, Dr. Segar explained that he bills for the accident separately from what he would bill to Medicare if a patient would present for regular treatment. Dr. Segar testified that his medical expenses in this matter were only related to the accident at issue.

Accordingly, we find the treatments, services, and prescriptions were corroborated and causally connected to the accident at issue by the testimony offered by Dr. Segar. Therefore, based on the uncontroverted medical evidence in the record, we affirm the trial court's award of Ivory's accident-related and incurred medical expenses of $2,132.90.

Finally, Defendants allege Ivory failed to establish that he owned the damaged truck and, therefore, failed to establish an essential element to his property damage claim. Defendants contend that because the truck was a total loss, i.e., repair costs exceeding vehicle value, the issue of salvage arises. Defendants opine that title should transfer to Safeway to sell the vehicle and recoup the salvage value because the trial court awarded Ivory the full actual cash value with no deduction for salvage.

This court has stated the following with regard to property damage claims:

13

> When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage; it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to the property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired.

*Rogers v. Commercial Union Ins. Co.*, 01-443, pp. 6-7 (La.App. 3 Cir. 10/3/01), 796 So.2d 862, 867 (quoting *Coleman v. Victor*, 326 So.2d 344 (La.1976)).

In this case, the trial court awarded $1,500.00 in property damages. The trial court's award was based on the testimony of Defendants' expert appraiser, Corney. On cross-examination, Corney testified that the truck sustained more than $2,000.00 in damages.

After having carefully reviewed the record, we are convinced that the trial court did not err in awarding Ivory $1,500.00 for the property damage to his truck as a result of the accident.

### DECREE

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to Defendants, Jake Vidrine, and his automobile insurer, Safeway Insurance Company of Louisiana.

**AFFIRMED.**